**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**LORI CLEGG-MITCHELL**                                                  **PLAINTIFF**

**v.**                                  **4:06CV01605-WRW**

**ARKANSAS DEPARTMENT OF**
**CORRECTION,** *et al.*                                    **DEFENDANTS**

<u>**ORDER**</u>

Pending is Defendants' Motion for Summary Judgment (Doc. No. 21). Plaintiff

has responded (Doc. No. 27).

Plaintiff alleges that Defendants violated her rights protected by Title VII,

19 U.S.C. § 1983, and the Arkansas Civil Rights Act by discriminating against her based

on gender and disability.[1] Plaintiff also alleges that she was retaliated against for filing a

lawsuit in March, 2005, against the Arkansas Department of Corrections ("ADC") and

several of its officials after filing a charge of discrimination with the EEOC.[2]

Defendants' Motion is GRANTED.

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material

fact, so that the dispute may be decided on purely legal grounds.[3]  The Supreme Court

has established guidelines to assist trial courts in determining whether this standard has

been met:

---

[1]Doc. No. 1.

[2]*Id*.

[3]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

1

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[4]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[5]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[6]  I must view the facts in the light most favorable to the party opposing the motion.[7]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

[T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[8]

---

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[5]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[6]*Id.* at 728.

[7]*Id.* at 727-28.

[8]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

2

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[9]

## II. BACKGROUND

Plaintiff is an African American female.[10] Defendant ADC hired Plaintiff as Substance Abuse Program Leader on September 7, 1997; Plaintiff was promoted to Substance Abuse Program Coordinator in January, 2003.[11] Because of Plaintiff's pregnancy, Plaintiff asked that her office be moved closer to a bathroom, and that she be allowed to bring bottled water to work.[12] Defendant James Lamb asked Plaintiff to bring a note from her doctor setting out those requests, which Plaintiff did.[13] When presented with the request about moving closer to a bathroom, Defendant Lamb asked Plaintiff if she could use the upstairs bathroom - - a men's restroom.[14]

---

[9]*Anderson*, 477 U.S. at 248.

[10]Doc. No. 1.

[11]*Id.* At all relevant times, Plaintiff was employed in ADC's Substance Abuse Treatment Program "SATP." The ADC also offered a Therapeutic Community ("TC") Program. Doc. No. 28. The difference in the two programs was the length and level of intensity. *Id.*

[12]Doc. No. 1. The SATP was housed in Barracks 5. Doc. No. 28. The bathroom that SATP staff generally used was on the lower level of the barracks. *Id.* Plaintiff performed many of her job duties on the lower level: teaching educational classes; observing counselors in training; facilitating interactive groups; and assessing inmate participants' progress by observation. Doc. No. 22, Ex. 1; Doc No. 22, Ex. 2.

[13]Doc. No. 22, Ex. 1. The letter from Plaintiff's doctor, dated July 31, 2006, reads: "Lori is my patient and under my care for pregnancy. Please allow her to be able to bring bottled water in to work. It is also requested to move her to an office closer to a restroom due to frequent trips she has to make due to pregnancy." Doc. No. 28, Ex. 9.

[14]Doc. No. 1.

Plaintiff asked that her desk be moved to a location where she would not need to negotiate stairs.[15] In connection with her requests to be closer to a restroom and not required to negotiate stairs, Plaintiff wanted to move to an office in the barracks housing the TC program, and suggested she could begin TC training.[16] Defendants partially honored Plaintiff's requests: Defendants allowed Plaintiff to bring bottled water to work, moved her desk closer to a restroom, and moved Plaintiff's desk to a location where she would not have to climb stairs as often.[17] Plaintiff was not, however, allowed to move to another barracks.[18] Plaintiff was not satisfied with the placement of her desk and alleges that the new location of her desk was unsafe, and negatively affected her work because she was away from her computer and telephone.[19]

Plaintiff, in connection with her pregnancy, was admitted to the hospital on August 16, 2006.[20] While in the hospital she had surgery and delivered her child.[21] On August 18, 2006, Plaintiff applied for FMLA leave; UAMS notified Defendant Lamb of Plaintiff's FMLA request.[22] Plaintiff returned to work with no restrictions on November 6, 2006.[23]

---

[15]Doc. No. 22, Ex. 1.

[16]*Id.* The TC and SATP programs were located in a different barracks.

[17]Doc. No. 22; Doc. No. 22, Ex. 1.

[18]*See* Doc. No. 1; Doc. No. 22.

[19]Doc. No. 22, Ex. 1.

[20]*Id.*

[21]*Id.*

[22]Doc. No. 22, Ex. 1; Doc. No. 22, Ex. 9.

[23]Doc. No. 22, Ex. 1.

In mid-August, 2006, Plaintiff had been absent from work for more than three workdays.[24] Defendant Lamb was unaware that Plaintiff filed an application for FMLA leave, and he called Plaintiff's husband to ask that Plaintiff submit medical documentation in connection with Plaintiff's continued absence.[25]

Plaintiff alleges that Defendants' actions discriminated against her based on gender and disability, and were in retaliation for previously filing EEOC complaints and subsequent litigation.[26]

## III. DISCUSSION

### A. Gender Discrimination

#### 1. 42 U.S.C. § 1983

The equal protection clause of the Fourteenth Amendment secures a plaintiff's right not to be discriminated against based on gender.[27] Violations of the equal protection clause are actionable under 42 U.S.C. § 1983.[28]

---

[24]Doc. No. 22, Ex. 8.

[25]Doc. No. 22, Ex. 1; Doc. No. 22, Ex. 8.

[26]Doc. No. 1. Plaintiff filed two EEOC charges of discrimination against Defendant ADC. Doc. No. 22. In 2005, Plaintiff subsequently filed a complaint against the ADC and several ADC officials, alleging race and sex discrimination, retaliation, and violations of the Uniformed Services Employment and Reemployment Rights Act. Doc. No. 22, Ex. 3. The United States District Court for the Eastern District of Arkansas granted summary judgment in favor of defendants. *Clegg v. Ark. Dep't. Corr.*, 496 F.3d 922 (2007). The Eighth Circuit Court of Appeals upheld the District Court's decision. *Clegg-Mitchell v. Ark. Dep't. Corr., et al.*, 496 F.3d 922 (8th. Cir. 2007)

[27]See *United States v. Virginia*, 518 U.S. 515, 532 (1996).

[28]Title 42 U.S.C. Section 1983, reads in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

a. The Proper Defendants

The Constitution of the United States bars any suit brought in federal court by an individual against a state.[29]  Suing an agency of a state is the same as suing the state.[30] Likewise, suing a state official in his official capacity is the same as suing the state.[31] Only if the state waives its sovereign immunity, or if legislation passed by Congress abrogates the state's immunity, can the bar be overcome.[32] The state of Arkansas has not waived its sovereign immunity.[33]  Further,   42 U.S.C. § 1983 does not abolish a state's Eleventh Amendment immunity.[34]  Rather, a state's Eleventh Amendment immunity bars a  42 U.S.C. § 1983 suit against the states and the state's officials in their official capacity.[35]

Plaintiff's Complaint names as Defendants: the Arkansas Department of Corrections; James Lamb, in his individual and official capacity; and Roger Cameron in his individual and official capacity. The ADC is a state agency. Plaintiffs complaint against the ADC is, then, the same as a complaint against the state of Arkansas. Because Arkansas has not waived its sovereign immunity, Plaintiff's suit against the ADC is barred. Further, Plaintiff's suit against James Lamb and Roger Cameron in their official

---

[29]See *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).

[30]See *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).

[31]See *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (A suit against a state official in his or her official capacity is a suit against the state).

[32]See *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991).

[33]*Id.*

[34]*Quern v. Jordan*, 440 U.S. 332, 345 (1979) (holding that 42 U.S.C. § 1983 does not abrogate a state's immunity).

[35]See *Kentucky v Graham*, 473 U.S. 159, 169 (1985).

capacities is likewise barred, because suing a state official in his official capacity is the same as suing the state.  The remaining Defendants in Plaintiff's 42 U.S.C. §1983 claim are James Lamb and Roger Cameron in their individual capacities only.

b. <u>Failure to Select For Training</u>

Intentional discrimination may be shown by direct or circumstantial evidence.[36] When a plaintiff's claims of discrimination are based on indirect evidence, the claims must be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*[37]  Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination.[38]  A plaintiff establishes a *prima facie* case of discrimination by proving (1) that she is a member of a protected class; (2) that she was qualified for the training or benefit; (3) that she was rejected; and (4) that the employer instead selected a similarly situated employee who was not part of the protected group.[39] At the *prima facie* stage, the plaintiffs' burden of showing that she is similarly situated to other job applicants is "not onerous."[40]

Once the plaintiff meets this initial threshold, a presumption arises that the employer "unlawfully discriminated against the employee."[41]  The burden of production then shifts to the employer, who must show some legitimate, nondiscriminatory reason

---

[36]See *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

[37]411 U.S. 792 (1973).

[38]*Id.*

[39]See *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996).

[40]*Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004) (quoting *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308 (8th Cir. 1994)).

[41]*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

for the employment decision.[42] Within the *McDonnell Douglas* framework, the court is not required to assess the credibility of the defendant's explanation of his actions.[43]  Once the defendant articulates a "legitimate, nondiscriminatory reason for its decision," the presumption raised by the *prima facie* case of discrimination is rebutted and "drops from the case."[44]   At all times in this analysis, the ultimate burden of production remains with the plaintiff,[45] and once the defendant has met its burden, the plaintiff must have "a fair opportunity to show that [the employer's] stated reason for [the employment decision] was in fact pretext,"[46] or that the proffered reasons for the employer's action were not true.[47]

Plaintiff alleges gender discrimination in connection with the placement of her desk, and not being relocated to another barracks and sent to TC program training. Plaintiff meets the first two elements to establish a *prima facie* case of discrimination: she is a member of a protected class and she was qualified for the training. Viewing the facts in the light most favorable to the non-moving party, I will assume that Plaintiff was rejected for training. Plaintiff thus also meets the third element. However, based on the record, Plaintiff cannot prove that other similarly situated employees, who were not part of the protected group, were selected for the training. The record reflects that three similarly situated male employees were not put into training until November, 2006, long

---

[42]*McDonnell Douglas*, 411 U.S. at 802.

[43]*St. Mary's Honor*, 509 U.S. at 509.

[44]*Id.* at 507.

[45]*Id.*

[46]*McDonnell Douglas*, 411 U.S. at 804.

[47]*St. Mary's Honor*, 509 U.S. at 508.

after Plaintiff suggested that her desk be moved to another barracks and that she be put into TC training early.[48] Because Plaintiff can not establish a *prima facie* case of discrimination, her claim fails.

      c. <u>Hostile Work Environment</u>

Plaintiff's Complaint and Response to Defendants' Motion for Summary Judgment appear to argue gender discrimination in the form of a hostile work environment. To establish a cause of action for hostile work environment sex discrimination, a plaintiff must prove that (1) she belonged to a protected class; (2) she was being sexually harassed; (3) the conduct was based on her gender; (4) the conduct was unwelcome; and (5) the harassment affected a term, condition, or privilege of her employment.[49] "Conduct must be extreme to amount to a change in the terms and conditions of employment."[50] "Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[51] Not all conduct is abusive. In determining whether conduct is abusive, relevant factors are the frequency of the conduct, the severity of the conduct; whether the conduct is humiliating or physically threatening, versus an "offensive utterance"; and if the conduct unreasonably interferes

---

[48]Doc. No. 22, Ex. 2. Plaintiff's colleague in SATP, Obadiah Davis, began TC training only around November 1, 2006. Two other male counselors, Cedric Albritton and Scott Mabry, were received TC training after November 1, 2006.

[49]See *Ottman v. City of Independence*, 341 F.3d 751, 759-760 (2003) (citing *Moring v. Ark. Dep't. Of Corr.*, 243 F.3d 452, 455 (8th Cir. 2001).

[50]*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

[51]See *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).

with an employee's work performance."[52] Only conduct that a reasonable person in the plaintiff's position would find severely hostile or abusive is actionable.[53]

Plaintiff's Complaint alleges that several of Defendants' actions were discriminatory: Defendants' placement of her desk on the lower floor of the barracks where there was neither a panic button, a computer, nor a telephone; Defendant Lamb's asking if she could use the men's restroom on the upstairs level; Defendant Lamb's request for medical documentation in connection with Plaintiff's absence from work; and Defendant not beginning Plaintiff's TC training upon her request.

Plaintiff obviously meets the first element in establishing hostile work environment sexual discrimination: she is a member of a protected class. Plaintiff, however, cannot establish that Defendants' conduct was harassment. Plaintiff requested, that she be moved.[54] Defendants granted her request. Plaintiff's desk was moved closer to a women's restroom -- to the foot of the stairs on the lower level of the barracks.[55] Plaintiff also requested that she be placed in a location where she not need negotiate stairs. Plaintiff performed many of her job duties on the lower level of the barracks.[56] The new location of Plaintiff's desk on the lower level of the barracks also satisfied Plaintiff's

---

[52]*Ottman*, 341 F.3d at 760 (citing *Harris v. Forklift Sys., Inc*. 510 U.S. 17, 23 (1993)).

[53]*Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (referencing  *Harris v. Forklift Sys., Inc*., 510 U.S. 17 (1993)).

[54]The letter from Plaintiff's doctor, dated July 31, 2006, reads: "Lori is my patient and under my care for pregnancy. Please allow her to be able to bring bottled water in to work. It is also requested to move her to an office closer to a restroom due to frequent trips she has to make due to pregnancy." Doc. No. 28, Ex. 9.

[55]Doc. No. 22, Ex. 2. Plaintiff submitted photographs showing Plaintiff's desk at the foot of a flight of stairs. Doc. No. 28, Ex. 11.

[56]Doc. No. 22, Ex. 2.

request that she be placed in a location from which she need not go up and down stairs.[57]

When Defendant Lamb asked Plaintiff if she could use the restroom upstairs, the

question was in response to Plaintiff requesting that her desk be moved to be closer to a

bathroom.[58] When Plaintiff reminded Defendant that the upstairs bathroom was a men's

restroom, Defendant Lamb said "Oh, okay."[59]

   Plaintiff also alleges that Defendant Lamb's request for medical documentation in

connection with her absence was discriminatory. On Plaintiff's third day of absence from

work, Defendant Lamb called Plaintiff's husband to request a medical excuse.[60]   The

paperwork was faxed from the hospital later that day.[61] Plaintiff requested FMLA leave

on August 18, 2006 for a period of 12 weeks, beginning August 15, 2006.[62] Plaintiff's

request was granted, and she returned to work under no restrictions on November 6,

2006.[63]

   I find that there is no genuine issue of material fact in connection with Plaintiff's

hostile work environment sex discrimination claim. The conduct complained of was not

abusive or pervasive. To a large extent, Defendants' actions towards Plaintiff were at the

---

[57]Plaintiff's clients' files, telephone, and computer were on the upper level of the barracks. Doc. No. 22, Ex. 2.

[58]Doc. No. 22, Ex. 2. When asked what happened in connection with her being told to use a men's restroom, Plaintiff said about Defendant Lamb: "I don't know if he knew what he was saying, but he was asking me, well, why couldn't I use the bathroom upstairs. And I'm like, 'This is a men's unit, that's a male's bathroom.' Defendant Lamb replied 'Oh, okay.'

[59]Doc. No. 22, Ex. 2.

[60]*Id.*

[61]*Id.*

[62]*Id.*, Dep. Ex. 9.

[63]Doc. No. 22, Ex. 1.

request of Plaintiff. While Plaintiff may not have liked the consequences of her request, none of the laws Plaintiff alleges Defendants violated provide a "general civility code."[64] Plaintiff's hostile work environment sexual discrimination claim fails.

      d. <u>Sex Discrimination</u>

      Discrimination other than hostile work environment is also analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*[65]  Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination.[66]  Plaintiff establishes a prima facie case of discrimination by showing that she is: (1) a member of a protected group; (2) was meeting the legitimate expectations of her employer; (3) suffered an adverse employment action; and (4) that circumstances permit an inference of discrimination.[67] An adverse employment action is a "material change in the terms or conditions of her employment."[68]  "Not every setback amounts to an adverse employment action."[69]  "Mere inconvenience without any decrease in title, salary or benefits or that results only in minor changes in working conditions does not meet this standard."[70] In determining whether a plaintiff suffered a

---

[64]*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998).

[65]411 U.S. 792 (1973).

[66]*Id.*

[67]See *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 550 (2005).

[68]*Ledergerber v. Strangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). Discrimination claims under 42 U.S.C. § 1983, Title VII, and the ACRA are analyzed in a similar manner. *Id.*

[69]*Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074 (8th Cir. 2006) (no adverse employment found where management gave Plaintiff three written reprimands, because Plaintiff could not point to a cut in pay, reduction in hours, or any other significant change to the conditions of employment).

[70]*Wedow v. City of Kan. City*, 442 F.3d 661, 672 (8th Cir. 2006).

material employment disadvantage, the Eighth Circuit has looked to factors such as if there was a reduction in title, in benefits, or in salary.[71]

The record does not support a conclusion that Plaintiff suffered an adverse employment action. Plaintiff's allegations are largely in connection with the placement of her desk. The relocation of Plaintiff's desk was at her request (even though she was not satisfied with the placement of her desk) and was not a permanent change; the relocation could be considered a minor inconvenience. Nothing in connection with Plaintiff's status or salary changed. There is nothing else showing any other changes in the conditions of Plaintiff's employment.[72] Because Plaintiff cannot show that she suffered an adverse employment action, her discrimination claim fails.

        e. Qualified Immunity

When a state official is sued in his individual capacity, the official is entitled to qualified immunity as long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[73] The initial inquiry is whether, taken in the light most favorable to the allegedly injured party, the facts show that a state official violated a constitutional right.[74] If a constitutional right has

---

[71]See *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (no adverse employment action where a secretary's reassignment without a reduction in pay, benefits, or title, even though new position was more stressful and encompassed fewer duties).

[72]Doc. No. 28. None of the material submitted by Plaintiff could support a conclusion of gender discrimination.

[73]See *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007).

[74]*Id.*

been violated, the next step is to determine if that right was clearly established at the time of the violation.[75]

Plaintiff alleges that Defendants violated the equal protection clause of the Fourteenth Amendment by discriminating against her based on gender. It was already shown above that Plaintiff, in connection with TC training, was treated no differently than similarly situated male employees. As noted above, the record supports the conclusion that Plaintiff's desk was moved because she requested it -- not because she was a female being treated differently from male employees. Defendant Lamb's request for a medical excuse when Plaintiff was in the hospital was likewise not based on gender, but was made because he did not know that Plaintiff had filled out an application for FMLA leave. Defendants are protected by qualified immunity because they did not violate a "clearly established statutory or constitution rights of which a reasonable person would have known."[76]

Plaintiff's gender discrimination claim fails at all levels: Defendants are protected by qualified immunity; there is no genuine issue of material fact in connection with the failure to train claim; and there is no genuine issue of material fact in connection with Plaintiff's hostile work environment claim or other discrimination claim.

2. TITLE VII

a. The Proper Defendants

Title VII makes it unlawful for an employer to discriminate against an employee based on sex.[77] An employer under Title VII is defined as "a person engaged in an

---

[75]See *id.*

[76]*McDonnell Douglas Corp.*, 37 F.3d at 382.

[77]42 U.S.C. § 2000e-2(a)(1).  When Congress enacted the Pregnancy Discrimination Act in 1978, Congress amended Title VII of the Civil Rights Act of 1964

industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 USC § 2000e(b).  The Eighth Circuit has held that coworkers and superiors can not be held individually liable under Title VII.[78]

Defendants Lamb and Cameron in their individual capacities cannot be held liable under Title VII and any claims against them in their individual capacities are dismissed. The ADC, and Defendants Lamb and Cameron in their official capacities, remain as proper defendants.

### a. The Claims of Discrimination

The substantive analysis for Title VII discrimination claims and 42 U.S.C. § 1983 discrimination claims is much the same.[79] Accordingly, all of the conclusions I reached in the analysis of 42 U.S.C. § 1983 apply here, as well. As shown above, there is no genuine issue of material fact in connection with Plaintiff's sex discrimination claims.

### 3. The Arkansas Civil Rights Act

### a. The Proper Defendants

Again, any suit brought in federal court by an individual against a state is barred unless the state waives its sovereign immunity or legislation passed by Congress abrogates that immunity.[80] The Arkansas Civil Rights Act specifically reads "[n]othing in

---

to include discrimination  based on pregnancy as sex discrimination under Title VII. Title VII at § 2000e(k)(1994).

[78]See *Bales v. Walmart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998); *Smith v. St. Bernards Regional Medical Center*, 19 F.3d 1254, 1255 (8th Cir. 1994).

[79]See *Weger v. City of Ladue*, 500 F.3d 710 (8th Cir. 2007); *Brenneman v. Famous Daves of Am., Inc.*, No. 06-1851, 2007 U.S. App. Lexis 26558 at *8 (Nov. 16, 2007 8th Cir.) (citing *Weger v. City of Ladue*, 500 F.3d 710, 718 (2007)).

[80]See *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).

this subchapter shall be construed to waive the sovereign immunity of the State of Arkansas.[81] Because suing a state agency, and state officials in their official capacity, is the same as suing the state,[82] which is barred in this instance, all ACRA claims against the ADC and Defendants Lamb and Cameron in their official capacities are dismissed.

### b. The ACRA and 42 U.S.C. § 1983

The Arkansas Civil Rights Act provides a cause of action for "the deprivation of any rights . . . secured by the Arkansas Constitution" by any person acting under color of state law.[83] The statute further provides that, in construing this section, "a court may look for guidance to state and federal decisions interpreting . . . 42 U.S.C. § 1983."[84] Plaintiff's ACRA claim is essentially the same as her claim under 42 U.S.C. § 1983.[85]

I concluded after analyzing Plaintiff's 42 U.S.C. § 1983 gender discrimination claim that the record contains no genuine issue of material fact, and I find that conclusion applicable to Plaintiff's gender discrimination ACRA claims, as well. Further, Defendants Lamb and Cameron are protected by qualified immunity in connection with Plaintiff's ACRA sex discrimination claim.

---

[81]Ark. Code Ann. § 16-123-104.

[82]*Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997); Hafer v. Melo, 502 Ul.S. 21, 25 (1991).

[83]Ark. Code Ann. § 16-123-105(a).

[84]Ark. Code Ann. § 16-123-105(c).

[85]See *Clegg v. Ark. Dep't. Corr.*, 496 F.3d 922, 927 (8th. Cir. 2007).

**B. DISABILITY DISCRIMINATION**

1. 42 U.S.C. § 1983

a. The Proper Defendants

A plaintiff may bring a claim under 42 U.S.C. § 1983 against officials acting under color of state law for violations of "rights, privileges, or immunities secured by the Constitution and laws" of the United States.[86] Under 42 U.S.C. § 1983, a cause of action lies for the violation of rights that are protected by federal statutes.[87] However, Title II of the Americans with Disabilities Act bars § 1983 claims against individual capacity defendants.[88] Accordingly, Plaintiffs claims against Defendants Lamb and Cameron in their individual capacities are dismissed.

b. Discrimination Based on Disability

Plaintiff alleges she was discriminated against based on her disability -- pregnancy. While pregnancy may be a disability in the practical sense of the word, pregnancy is not recognized as a disability by federal law.[89] For example, the Americans with Disabilities Act ("ADA") prohibits an employer from discriminating against an employee "because of the disability of such individual."[90] Under the ADA, to find that a condition is a disability, that condition must be an impairment.[91] "Conditions, such as pregnancy, that are not the result of a physiological disorder are . . . not impairments."[92]

---

[86]42 U.S.C. § 1983.

[87]*Main v. Thiboutot*, 448 U.S. 1, 4-8 (1980).

[88]*Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (1999).

[89]See Appendix to 29 C.F.R. § 1630.2(h).

[90]42 U.S.C. § 12112(a); 29 C.F.R.§ 1630.2(g)(1).

[91]See 42 U.S.C. § 12102(2)(A).

[92]Appendix to 29 C.F.R. § 1630.2(h).

Plaintiff cannot succeed in connection with her 42 U.S.C. § 1983 allegation of discrimination based on the disability of pregnancy.

### 2. Title VII

Title VII does provide a cause of action for disability discrimination,[93] so Plaintiff's Title VII disability discrimination claims are dismissed.

### 3. The ACRA

The State of Arkansas has not waived sovereign immunity and thus Plaintiff is barred from bringing suit against the State of Arkansas, Arkansas state agencies, and Arkansas state officials in their official capacities. Plaintiff's ACRA claims against the ADC and Defendants Lamb and Cameron in their official capacities are dismissed.

In analyzing a disability claim under the ACRA, the Eighth Circuit uses the "same principles employed in analyzing claims under the [ADA]."[94] Because pregnancy is not an impairment under the ADA,[95] Plaintiff's ACRA disability discrimination claim fails.

## C. RETALIATION

Plaintiff's Complaint alleges that Defendants retaliated against her for filing an EEOC complaint and for subsequent litigation.[96] Plaintiff's Complaint alleges Defendants' actions violated Title VII. Plaintiff's Amended Complaint lists 42 U.S.C. § 1983, Title VII, and ACRA as causes of action for the retaliation claim. The substance of 42 U.S.C. § 1983, Title VII, and ACRA retaliation claims is "virtually identical," but

---

[93]See 42 U.S.C. § 2000(e)-2(a)(1).

[94]*Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 482 n.1 (2007) (citing *Duty v. Norton-Alcoa Propoants*, 293 F.3d 481, 490 (8th Cir. 2002)).

[95]Appendix to 29 C.F.R. § 1630.2(h).

[96]Doc. No. 1. See *Clegg-Mitchell v. Ark. Dep't. Corr., et al.*, 496 F.3d 922 (8th. Cir. 2007). The Eighth Circuit Court of Appeals upheld the District Court's granting of summary judgment in favor of the Defendants.

differ in the appropriate defendants.[97] Because the substance of the claims is virtually identical, I will combine the discussion of the three.

To establish a *prima facie* case of retaliation, a Plaintiff in a Title VII case must show each of the following elements: "(1) he was engaged in statutorily protected activity, (2) he suffered adverse employment action, and (3) a causal connection between the two exists." Adverse employment action is so critical to the claim that summary judgment is appropriate if the plaintiff fails to provide sufficient facts demonstrating that he suffered an adverse employment action.[98] "Not every setback amounts to an adverse employment action."[99] An adverse employment action is a "tangible change in duties or working conditions that constitute a *material employment disadvantage*"[100] or a "material change in the terms or conditions of her employment."[101]

There is nothing in the record to support a conclusion that Plaintiff suffered an adverse employment action. There is no evidence, or even allegation, that the terms of her employment changed. Perhaps Plaintiff's allegations in connection with the placement of her desk could be considered a change in the conditions of her employment, but I find that those changes were not material. The placement of her desk was a temporary solution brought about by Plaintiff's request in connection with a temporary

---

[97]Plaintiff's Fourteenth Amendment (42 U.S.C. § 1983) claim can not stand against Defendants Lamb and Cameron in their official capacities, while Plaintiff's Title VII claim stands against the ADC.

[98]*Baucom v. Holiday Cos.*, 428 F.3d 764, 768 (8th Cir. 2005).

[99]*Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074 (8th Cir. 2006) (no adverse employment found where management gave Plaintiff three written reprimands, because Plaintiff could not point to a cut in pay, reduction in hours, or any other significant change to the conditions of employment).

[100]*Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003) (emphasis added).

[101]*Ledergerber v. Strangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). In determining whether a plaintiff suffered a material employment disadvantage, the Eighth Circuit has looked to factors such as if there was a reduction in title, in benefits, or in salary. See *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)

condition, her pregnancy. Likewise, Plaintiff suffered no adverse employment action in connection with Defendant Lamb requesting medical documentation because his request did not cause a material change in the terms or conditions of her employment. Because Plaintiff cannot show that she suffered an adverse employment action, Plaintiff's retaliation claim fails.

## CONCLUSION

When viewed in the light most favorable to the non-moving party, the record shows that Plaintiff is cannot satisfy the elements of a claim of discrimination based on gender and disability, and in connection with retaliatory action, under either 42 U.S.C. § 1983, Title VII, or the ACRA. Because Plaintiff cannot succeed under any of her stated causes of action, Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 18th day of December, 2007.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE